COMMONWEALTH *vs.* OLIMPIO LOPES. No. 86-1104. April 20, 1988. *Controlled Substances*. *Practice, Criminal,* Disclosure of statement by witness, Motion to suppress, Sentence. *Evidence,* Redirect examination.

Olimpio Lopes was convicted of trafficking in more than 100 grams of cocaine and distribution of cocaine. Pursuant to a search warrant, State police seized 147 grams of cocaine and assorted drug paraphernalia from the defendant's house. Of the five points which the defendant makes on appeal, only one requires extended discussion.

1. *The "surprise evidence."* Among the persons who were in the house when the police made their raid and search was a nephew of the defendant, Victor Rodrigues. Called as a government witness, Rodrigues testified that his uncle had invited him to the bedroom of his home and had displayed a generous supply of cocaine on a table. Rodrigues was about to relate what his uncle said to him when defense counsel objected. At a bench conference the prosecutor explained that Rodrigues would report the defendant as having said, "This cocaine will take care of all my problems." Defense counsel manifested surprise and at once complained that he had heard nothing about that statement before or, for that matter, "anything from a Victor Rodrigues."

There had been a pretrial conference in accordance with Mass.R.Crim.P. 11, 378 Mass. 862 (1979). No report of a conference had, however, been filed as subparagraph (a)(2)(A) of rule 11 requires. Neither party was able to produce a copy of the report. Without a reliable basis for determining what the defense had asked for and what the Commonwealth had agreed to deliver as a result of the conference, the trial judge acted within his discretion in declining to exclude the proffered testimony of Rodrigues. Defense counsel did not appear greatly discomfited; he sought no continuance to better prepare himself or his client to cope with what Rodrigues would say.

It appears from the record that the defense had made *some* request under Mass.R.Crim.P. 14(a)(l)(A), 378 Mass. 874 (1979), for statements of the defendant; a colloquy between the trial judge and counsel refers to a written response from the Commonwealth that it did not have written statements of the defendant or oral statements reduced to writing. In that case, under *Commonwealth* v. *Lewinski*, 367 Mass. 889, 903 (1975), *Commonwealth* v. *Gilbert*, 377 Mass. 887, 892-896 (1979), *Commonwealth* v. *Lapka*, 13 Mass. App. Ct. 24, 29-31 (1982), and *Commonwealth* v. *Janard*, 16 Mass. App. Ct. 931, 933-934 (1983), the Commonwealth should have made the statement attributed to the defendant available to the defense whether reduced to writing or not. Those cases, however, require the defendant to demonstrate significant prejudice by reason of the nondisclosure. See also Smith, Criminal Practice and Procedure § 1416 (2d ed. 1983).

As developed, Rodrigues's testimony was more equivocal than advertised. He described his uncle, the defendant, as: "Just talking about — you know — that is what is going to straighten him out. This was going to help him. He needed this." In closing argument the prosecutor, as he was entitled to do on the basis of his cross-examination of Lopes, reasonably translated what Lopes had said to "this will solve all my problems." The significance of that statement was its bearing on the intent of the defendant to use the large inventory of cocaine displayed to make money, i.e., to sell it. It was in evidence that the defendant had substantial debts and was unemployed. Even had the defendant enjoyed foreknowledge of the Rodrigues testimony, its damaging quality, such as it was, would be a difficulty the defendant would have had to conjure with. As it was, the defense cross-examined Rodrigues about the meaning of the statement he had attributed to his uncle. Perhaps it referred to the defendant's need for his own considerable cocaine habit. When the defendant was called to testify, he explained away the statement along those lines. The answer may not have been overly persuasive but, had the defendant, as he now suggests on appeal, elected not to testify, the statement attributed to him would have been altogether unanswered. Other evidence against the defendant was powerful: the large amount of cocaine found, as well as the distribution paraphernalia, from which the jury could infer an intent to traffic in more than 100 grams. This was not a case of an amount of cocaine marginally over 100 grams. See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150 (1980), cert. denied, 451 U.S. 973 (1981); *Commonwealth* v. *Costello*, 392 Mass. 393, 398 (1984); *Commonwealth* v. *Donovan*, 395 Mass. 20, 24 (1985). We think the prejudice to the defendant from Rodrigues's testimony about what the defendant had said was minor in relation to the over-all evidence.

2. *Other points*. We comment on the other points raised by the defendant in summary fashion.

(a) Thomas Guilmet, a State police officer, testified that a person in possession of more than 140 grams of cocaine was "in the cocaine business" and "makes a living from it." The subject had been introduced by defense

counsel, who inquired of Officer Guilmet about the relation of the amount of drugs sold to the type of dealer involved in the transaction. That subject, then, was fair game on redirect examination. The police officer had testified to his experience in the narcotics field. No error attended the admission of his testimony. See *Commonwealth* v. *Maltais*, 387 Mass. 79, 92 (1982), observing that scope of redirect examination is within the sound discretion of the trial judge, and *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 760 (1984), which made the observation that testimony of opinion is not objectionable because it embraces an ultimate issue to be decided by the jury.

(b) In view of the seizure of the total of 147 grams of high quality cocaine, packaging materials, scales, cash, and inositol (a substance used to dilute cocaine), together with testimony of drug distribution patterns, there was more than sufficient evidence, considered in a light most favorable to the Commonwealth, from which a rational trier of fact could find the defendant guilty of trafficking. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676 (1979). See *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 349 (1983); *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. at 758. The motion for a required finding of not guilty of trafficking was rightly denied.

(c) Concerning the motion to suppress the incriminating evidence seized from the defendant's home pursuant to a search warrant, it is enough to say that the defendant's pretrial suppression motion was not accompanied by a memorandum of law, as expressly required by the second sentence of Mass.R.Crim.P. 13(a)(4), 378 Mass. 872 (1979). The rule is entitled to be given effect and we decline to consider the defendant's objections to the affidavit made in support of the issuance of the search warrant. See *Commonwealth* v. *Fudge*, 20 Mass. App. Ct. 382, 385 (1985).

(d) The constitutional validity of mandatory minimum sentences for serious narcotics offenses has been amply discussed. See *Opinion of the Justices*, 378 Mass. 822, 829-833 (1979); *Commonwealth* v. *Silva*, 21 Mass. App. Ct. 536, 541-545 (1986). A convicted defendant does not have a right to an individually tailored sentence based on mitigating circumstances. *Commonwealth* v. *Diatchenko*, 387 Mass. 718, 722-723 (1982).

*Judgments affirmed.*

*William C. Newman* for the defendant.

*William T. Walsh, Jr.*, Assistant District Attorney, for the Commonwealth.